GAGLIANO, Respondent, vs. OGDEN & COMPANY, INC., Appellant.

*November 16—December 19, 1944.*

For the appellant there was a brief by *Shea & Hoyt,* attorneys, and *C. F. Mikkelson* of counsel, all of Milwaukee, and oral argument by *Mr. Mikkelson.*

*Robert J. Gunnis* of Milwaukee, for the respondent.

WICKHEM, J.   For a period of nearly ten years prior to January 1, 1943, plaintiff was employed by defendant as a real-estate salesman.   He worked without a written contract until 1937 when because of some question as to the applicability of the federal social-security law to salesmen, a written contract was entered into between defendant and its salesmen, including plaintiff.   This contract provided in paragraph 2:

"When any property listed with the company is sold or leased as a result of the salesman's negotiations and efforts the company shall pay to the salesman a commission equivalent to one half of the net commission received by the company on such deal.   Except for such commissions the salesman shall pay all of his own expenses and shall arrange and provide at his own expense such facilities as he may deem advisable or necessary in his work."

In January, 1942, one Swigart, president of Oilgear Company, notified Elliott M. Ogden, president of defendant, that the government desired the company to enlarge its facilities and that this would necessitate purchase of additional land. Ogden was advised that ten acres would be required and his company was engaged to procure this land.   Plaintiff was designated to handle the assignment and to sell to Oilgear Company certain property owned by the Exton Realty Company.   In addition, plaintiff was to have available other parcels of land in case the Exton sale was not consummated.   The Exton property was sold to the Oilgear Company and plaintiff was paid one half of the commission.   In July, 1944, construction of the addition to client's plant was abandoned by the government.   Thereafter, at intervals plaintiff requested Ogden to contact the Oilgear Company as to what further services could be performed in their expansion program.

About the end of September, the Oilgear Company asked Ogden to arrange for the purchase of a certain building for the purpose of plant expansion.   Ogden handled the deal

without disclosing the situation to plaintiff. About the 15th of October plaintiff discovered the negotiations and had a conference with Ogden in the course of which he claimed that Oilgear Company, by reason of his handling of the earlier transaction was his prospect, client, or customer, and that he would be entitled to one half of the commission from the pending sale.

Plaintiff claims that after some discussion Ogden agreed and stated that plaintiff would be "cut in" on the deal and that the commission would be about $4,000. The deal was closed and on November 25, 1942, Ogden gave plaintiff a check for $2,000, one half of the asserted commission of $4,000. Later, it came to plaintiff's knowledge that the commission was actually $13,000 and this suit was brought for the difference between $4,000 and one half of $13,000—the commission to which plaintiff claims to be entitled.

The facts as they are stated in the preceding paragraph are based upon findings of the trial court which we consider to be supported by the evidence. It should be noted that there is a conflict in the evidence and that Ogden testified that he never conceded plaintiff's right to any commission; never concealed the amount of commission, and merely paid the $2,000 as a gesture of good will.

The trial court found that by reason of a custom in defendant's firm, and in firms engaged in real-estate brokerage in Milwaukee, a salesman who had acquired a prospect is entitled as against other salesmen and the company to his commission upon subsequent sales, without regard to his participation in negotiating them; and in this case, the prospect was plaintiff's, and he is entitled to his share of the commission, in spite of the fact that he was not permitted to close the deal.

Defendant asserts that the custom established by the evidence was much more limited than that found by the trial court. Defendant claims that the evidence is to the effect that brokerage firms kept a so-called "prospect file;" that this

file was in the custody of the manager of the business and was kept under lock and key; that as a condition to claiming a prospect, a salesman must file a card in the file. Since it is clear in this case that plaintiff did not file such card, defendant claims that the custom established is not broad enough to warrant his recovery.

A careful review of the record does not sustain this contention. As we read the evidence it is to the effect that the custom was that when a salesman procured a prospect or serviced one procured by the company, the prospect became his unless by reason of neglect, abandonment, or other sufficient reason another salesman was assigned to serve the client. The prospect file was not the creation of custom but was an office rule which took account of the custom and had for its sole purpose the avoiding of disputes between salesmen. The failure to file a card would have significance only in case of a dispute.

In this case no other salesmen were involved and there was here no such conflict as the rule concerning the prospect file was intended to obviate. The Oilgear Company's transactions were originally turned over to plaintiff by the company. He handled one transaction and received his commission. He made numerous inquiries as to whatever services he could perform for Oilgear Company, obviously considered this concern his client, and made his understanding in this respect clear to Ogden.

Ogden's concealment of the fact of the sale and later of the amount of the commission is corroborative of the custom and of Ogden's understanding that by the custom this was plaintiff's prospect. The fact that as soon as plaintiff broke through the secrecy concerning the transaction he was promised a share of the commission also tended to establish the existence of the custom and Ogden's understanding of its scope.

We therefore conclude that the finding of a custom broad enough to sustain plaintiff's right to a commission is not against the great weight and clear preponderance of the evidence.

Defendant's next contention is that evidence of the foregoing custom was inadmissible under the parol-evidence rule. This is based upon the fact heretofore stated that plaintiff had been working since 1937 under a written contract of employment. The clause of the written contract important here provides that when any property listed with the company is sold or leased as a result of the salesman's negotiations and efforts the commission of one half the total commission is to be paid to him.

It is argued by defendant that this clause so clearly limits a salesman's commissions to cases where he had an actual part in the negotiations that parol evidence of a custom extending his rights in accordance with the custom must be considered to vary the provisions of the writing.

Having in mind the surrounding circumstances, we think this contention cannot be sustained. It is, of course, true that proof of custom stands no higher than any other parol evidence, and is not admissible to vary the terms of a written contract. *State ex rel. Donahue-Stratton Co. v. Grimm,* 186 Wis. 154, 202 N. W. 162; *State ex rel. News Pub. Co. v. Park,* 166 Wis. 386, 165 N. W. 289. In this case, however, the trial court was entitled to conclude that the writing did not purport and was not intended fully to cover all of the working arrangements between defendant and its salesmen, and particularly that it did not purport to describe all of the circumstances under which a commission would be paid or to limit payments of commission to sales actually negotiated by the salesman. The writing was not the contract under which plaintiff was originally engaged. There is evidence that it was drafted in response to some question concerning the social-security law. The custom heretofore discussed antedated the writing, and unless clearly at variance with it, the

written contract must be supposed to have been made in the light of the custom, and unless the written contract was intended to integrate the entire working arrangement, it must be supposed to have been the intention that existing custom fill in such omissions as there might be in the written contract.

From this we conclude that the admission of evidence of the custom was not a violation of the parol-evidence rule.

The foregoing conclusions require that the judgment be affirmed.

*By the Court.*—Judgment affirmed.